IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01105-REB-MJW

EDWARD H. PHILLIPS, an individual,

Plaintiff,

v.

DUANE MORRIS, LLP, a limited liability partnership,
JOHN C. HERMAN, individually and as a partner of Duane Morris, LLP, and
ALLEN L. GREENBERG, individually and as a partner of Duane Morris, LLP,

Defendants.

## RECOMMENDATION ON
## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
### (Docket No. 52)

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order Referring Case (Docket No. 4) issued by Judge Robert E. Blackburn on April 25, 2013.  Now before the court for a report and recommendation is Defendants' Motion for Partial Summary Judgment (Docket No. 52).  The court has carefully considered the subject motion (Docket No. 52), plaintiff's response (Docket No. 62), and defendants' reply (Docket No. 65).  In addition, the court has taken judicial notice of the court's file, and has considered the applicable Federal Rules of Civil Procedure and case law.  The court now being fully informed makes the following findings of fact, conclusions of law, and recommendations.

### I. Summary of the Case

This matter is a legal malpractice suit stemming from a patent infringement case,

Case No. 97-cv-00212, filed in February 1997 in the United States District Court for the District of Colorado (the "Patent Case"). In the Patent case, plaintiff Edward Phillips alleged that the defendants (the "Patent Defendants") infringed his patent, United States Patent Number 4,677,798 for Steel Shell Modules for Prisoner Detention Facilities, issued on July 7, 1987 (the "'798 Patent"). A jury trial before Judge Marcia S. Krieger was set in the Patent Case, set to commence on February 27, 2006. After the trial date was set, plaintiff's original attorney, Carl Manthei, was terminated, and attorneys Robert Payne and Donald Mollick entered their appearances on behalf of plaintiff.

The jury trial commenced as scheduled. After plaintiff's case-in-chief, the Patent Defendants moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) (the "JMOL Motion"). Judge Krieger reserved ruling on the JMOL Motion until after she had a final transcript of the trial. On March 10, 2006, the jury returned a verdict in favor of plaintiff on the claims of patent infringement. They awarded base damages of $1.85 million and further found the Patent Defendants were liable for "willful infringement." The Patent Defendants were thus possibly exposed to an award of enhanced damages, interest from the date of infringement, costs, and attorney fees. Plaintiff sought a total of $10.5 million. Attorneys Payne and Mollick continued to represent plaintiff in post-trial matters, including briefing the JMOL Motion.

On November 21, 2006, defendants in this matter, John C. Herman and Allen L. Greenberg of Duanne Morris, LLP (hereinafter "defendants"), entered their appearances of behalf of plaintiff in the Patent Case. On November 28, 2006, Attorneys Payne and Mollick filed a motion to withdraw. Meanwhile, defendant Herman met with lead counsel for the Patent Defendants in an effort to settle the Patent Case. A settlement offer of $2

million was extended by the Patent Defendants. On December 4, 2006, plaintiff rejected the Patent Defendants' offer and made a new offer of $7,105,000. On December 6, 2006, the Patent Defendants rejected plaintiff's offer and made a new offer of $2.5 million. The Patent Defendants further requested that plaintiff agree to a joint request to stay the Patent Case for 30 days. On December 11, 2006, plaintiff rejected the Patent Defendants' offer and made a new offer of $6.1 million. In addition, defendants John C. Herman and Allen L. Greenberg of Duanne Morris, LLP decided to reject the request regarding the 30 day stay.

Settlement negotiations, through counsel, continued between December 14, 2006 and December 20, 2006. A tentative settlement for $4 million was reached by the parties. Communications regarding the settlement continued into the morning of December 22, 2006. However, at 9:00 a.m. on the 22nd, Judge Krieger entered an order granting the JMOL Motion and entered judgment in favor of the Patent Defendants on all claims.

Following Judge Krieger's order, the parties continued to negotiate a settlement. On December 29, 2006, the parties reached an agreement wherein plaintiff would dismiss the Patent Case, as well as his rights to seek to enforce the $4 million settlement, in exchange for $2,550,000. Defendants took a payment of $250,000 from the settlement proceeds.

Plaintiff's Complaint (Docket No. 5) in this matter includes seven claims: (1) negligence; (2) breach of fiduciary duty; (3) misrepresentation; (4) concealment of material facts; (5) negligent misrepresentation; (6) unjust enrichment; and (7) respondeat superior against defendant Duane Morris, LLP.

**II. Standard of Review**

Rule 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Bd. of Cnty. Comm'rs of the Cnty. of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried . . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp. 2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003). However, "[i]n order to survive summary judgment, the content of the evidence that the nonmoving party points to must be *admissible*. The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible. Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because a third party's description of a witness supposed testimony is not suitable grist for the summary judgment mill." Adams v. Am. Guarantee & Liability Ins. Co., 233 F.3d 1242,

1246 (10th Cir. 2000) (internal citations and quotations omitted).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Southway, 149 F. Supp. 2d at 1273. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." Id. "Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id. (quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Id. at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

## III. Analysis

In their Motion for Partial Summary Judgment (Docket No. 52), defendants argue summary judgment should enter in their favor as to plaintiff's theory that, had defendants' agreed to enter into the 30 day stay, plaintiff would have received a settlement larger than $2,550,000. Defendants put forth three arguments in this regard. Defendants first argue the doctrine of judgmental immunity protects them, as a matter of law, from claims based on an action arising from the exercise of judgment, i.e., defendants' decision not to agree to the stay. Defendants also argue there are no genuine factual disputes as to two causation issues: (1) that Judge Krieger would have

6

granted the stay; and (2) that had the stay been granted, plaintiff would have obtained a larger settlement.

**1. Judgmental Immunity**

First, defendants argue the doctrine of judgmental immunity protects them from plaintiff's claims which are premised on their failure to agree to the stay. The court must first examine whether the doctrine is applicable in Colorado.

Because this is a diversity action, Colorado law governs the substantive underlying claims in the instant case. Herrera v. Lufkin Indus., Inc., 474 F.3d 675, 683 (10th Cir. 2007). Defendants concede that Colorado has not adopted the judgmental immunity doctrine, but argue that "so many jurisdictions have adopted the rule that there is not reason to believe that Colorado would buck the trend." Defendants note that the Second, Sixth, and Eleventh U.S. Courts of Appeal, and courts in Washington, Florida, Alabama, Michigan, and New York have adopted the rule.

Without a guiding opinion from Colorado, the court must predict what the Colorado Supreme Court would do if faced with this issue. Pompa v. Am. Family Mut. Ins. Co., 520 F.3d 1139, 1142 (10th Cir. 2008); Johnson v. Riddle, 305 F.3d 1107, 1118 (10th Cir. 2002) (noting that, when the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule). The court may "consider . . . cases from the Colorado Court of Appeals only as they may aid [the court's] ability to predict how the Colorado Supreme Court might decide." Browning v. Am. Family. Mut. Ins. Co., 396 Fed. Appx. 496, 502 n.14 (10th Cir. 2010).

Generally, the standard of care in legal malpractice cases is as follows: "An

attorney owes to his client the duty to employ that degree of knowledge, skill, and judgment ordinarily possessed by members of the legal profession in carrying out the services for his client." Bebo Const. Co. v. Mattox & O'Brien, P.C., 990 P.2d 78, 83 (Colo. 1999) (internal quotation marks omitted). Although courts which have adopted the judgmental immunity doctrine describe it in various ways, defendants contend the doctrine stands for the proposition that, as a matter of law, "mere errors in judgment or in trial tactics do not subject an attorney to liability for legal malpractice." Halvorsen v. Ferguson, 735 P.2d 675, 681 (Wash. App. 1986). In other words, the doctrine protects attorneys from malpractice claims arising out of "acts and omissions . . . in the conduct of litigation which are based on an honest exercise of professional judgment." Woodruff v. Tomlin, 616 F.2d 924, 930 (6th Cir. 1980). Defendants argue that an attorney's tactics in negotiating a settlement plainly fall within the doctrine. In response, plaintiff argues that Colorado case law demonstrates that tactical decisions and settlement negotiations are neither immunized nor subject to a lesser standard of care. There are several Colorado Court of Appeals cases which are useful in predicting how the Colorado Supreme Court would decide the issue

In White v. Jungbauer, 128 P.3d 263 (Colo. App. 2005), the plaintiff sued his former attorneys who had advised him to take a settlement offer during the second day of trial. The defendants argued that the plaintiff's claims were barred by public policy considerations which encourage settlement. Id. at 264 (citing Muhammad v. Strassburger, 587 A.2d 1346 (Pa. 1991)). While recognizing "the important public policy in favor of settlement," the court held that "a litigant may bring a legal malpractice suit against his or her attorney even though the underlying action settled." Id. at 265.

8

In Temple Hoyne Buell Foundation v. Holland & Hart, 851 P.2d 192 (Colo. App. 1992), the plaintiff sued his former transactional attorneys, for failing to include a savings clause in the plaintiff's option contract, in order to mitigate against a risk that the option could be unenforceable for violating the rule against perpetuities. The trial court found that the option violated the rule, and the jury returned a verdict against the transactional attorneys. Id. at 194. On appeal, the court first found that the option did not violate the rule. Id. at 197-98. The transactional attorneys then argued for judgment as a matter of law in their favor since their professional judgment had been correct. Id. at 198. The court, however, found that the attorneys could still be liable if the standard of care required them to foresee the risk and take steps to prevent it. Id. Because the parties' experts disagreed, the court held there was a genuine issue of material fact as to whether the standard of care had such a requirement. Id. at 199; see also First Interstate Bank of Denver v. Berenbaum, 872 P.2d 1297 (Colo. App. 1993) (reversing trial court's judgment as a matter of law in favor of malpractice defendants premised on finding that attorney's judgment in drafting lease for client did not subject client to offset right, where factual issue of whether the standard of care required the attorney to foresee the risk of litigation over the offset and draft lease accordingly remained for the jury).

The court finds that the above cases clearly demonstrate a reluctance by Colorado Court of Appeal courts to extend immunity or reduce the standard of care in legal malpractice cases. Defendants argue Buell Foundation and First Interstate are distinguishable because they involve attorneys' legal analysis and not tactical judgments. While this may be true, the cases are still helpful in predicting how the

9

Colorado Supreme Court would approach the standard of care in a broader sense.

Indeed, there is a clear pattern in Colorado legal malpractice cases to leave determinations regarding the standard of care (and breach thereof) to the fact finder. See Anstine v. Alexander, 128 P.3d 249, 259 (Colo. App. 2005) (citing Martinez v. Badis, 842 P.2d 245, 252 (Colo. 1992)) ("With regard to legal malpractice claims . . . expert testimony generally is required to establish the standard of care."); McCafferty v. Musat, 817 P.2d 1039, 1044 (Colo. App. 1990) ("Whether the attorney employed the requisite degree of knowledge, skill, and judgment is one of fact for the jury to decide" based on the facts and circumstances of the case, in addition to the expert testimony.); Boigegrain v. Gilbert, 784 P.2d 849, 850 (Colo. App. 1989) ("Except in clear and palpable cases, expert testimony is necessary to establish the standards of acceptable professional conduct, deviation from which would constitute legal malpractice."). The only common exception appears to be when the attorney allowed the statute of limitations to run. See Giron v. Koktavy, 124 P.3d 821, 825 (Colo. App. 2005).

Based on the above, the court finds that the Colorado Supreme Court would not adopt the judgmental immunity doctrine as it is put forth by defendants. Accordingly, the court finds that defendants' Motion for Partial Summary Judgment (Docket No. 52) should be denied as to that argument.

**2. Causation: Judge Krieger Would Have Granted the Stay**

Next, defendants argue plaintiff cannot prove causation as there are no genuine factual disputes regarding the fact that Judge Krieger would not have entered the stay even if defendants had agreed to it.

"While the issue of causation is ordinarily a question for the jury, when the facts

10

are undisputed and reasonable minds could draw but one inference form them, causation becomes a question of law for the court." Gibbons v. Ludlow, 304 P.3d 239, 244 (Colo. 2013) (internal quotations omitted).

Defendants point to several things in support of their contention that Judge Krieger would not have granted the stay. First, defendants note that stays are generally disfavored in this district. See Ind v. Rusher, No. 12-cv-00997-WJM-KLM, 2012 WL 5389823, at *1 (D. Colo. Nov. 5, 2012). Second, defendants point to a specific case in which Judge Krieger denied a request for a stay based on settlement negotiations. See AB Invests., LLC v. Gelard, No. 10-cv-00046-MSK-BNB, 2012 WL 71757, at *8 (D. Colo. Jan. 9, 2012). Third, defendants point to Judge Krieger's Practice Standards which state that "[n]o deadline, hearing or trial is vacated, however, expect upon the filing of pleadings sufficient to resolve the matter and issuance of an order" and that "hearings, trials and pretrial deadlines will not be continued or vacated to facilitate settlement negotiations or alternative dispute resolution, or in anticipation of the filing of settlement documents." Docket No. 52-1.

In response, plaintiff argues that the two cases cited by defendants are distinguishable because they involved requests for stays in pre-trial settings. Plaintiff points out that in the Patent Case trial had been completed and there were no pending hearings or deadlines. Plaintiff argues the sections of Judge Krieger's Practice Standards cited by defendants are largely inapplicable for the same reason. Furthermore, plaintiff cites to the statement of an expert, William Trine, who stated that "Most certainly the judge would have [granted the stay] based on my experience over the years, anything that any judge can do to eliminate further work on the case, they

11

support. Any reasonable judge believing that there's a possible settlement being negotiated is going to be relieved that that judge doesn't have to do further work on the case." Docket No. 52-17, at 8; Docket No. 62-14, at 8-10.

The court finds there is a genuine dispute of material fact as to whether Judge Krieger would have granted the stay. Plainly it would have been within Judge Krieger's discretion to grant the stay. See Clinton v. Jones, 520 U.S. 681, 706-07 (1997) (finding a court has broad discretion to stay proceedings as incidental to its power to control its own docket). Given the posture of the Patent Case at the time the stay would have been considered, Judge Krieger's Practice Standards and the cases cited by defendants carry less weight. Regardless, each case carries unique circumstances, and attempting to predict a discretionary action by Judge Krieger based on previous, unrelated cases is largely a fool's errand. Mr. Trine's statements further demonstrate the existence of disputed material facts. For these reasons, the court finds that defendants' Motion for Partial Summary Judgment (Docket No. 52) should be denied as to defendants' "granting of the stay" argument.

**3. Causation: Plaintiff Would Have Obtained a Larger Settlement**

Finally, defendants argue plaintiff cannot prove causation as there are no genuine factual disputes regarding the fact that, had the stay been granted, plaintiff would have obtained a settlement larger than $2,550,000.

Citing to their own depositions, defendants state there is no evidence that the Patent Defendants' settlement offers would have increased to $4 million without the ongoing threat that Judge Krieger would increase the verdict to $10.5 million. Defendants argue plaintiff offers nothing but speculation to the contrary.

12

In response, plaintiff points to the series of offers made by the Patent Defendants prior to Judge Krieger entering the JMOL order. Specifically, the offers increased as follows: $2 million in November; $2.5 million on December 6th; $2.8 million on December 14th; $3.2 million on December 18th; and $4 million just before the JMOL order was entered. Plaintiff notes that the $2.5 million offer included the request for the stay, but did not make the offer contingent on it. In addition, plaintiff points to Mr. Trine's expert opinion, based on these facts, that it is more likely than not that the case should have settled for more than $2.55 million had defendants agreed to the stay. Docket No. 52-17, at 8-9; Docket No. 62-14, at 16-19.

The court finds there is a genuine dispute of material fact as to whether, had the stay been granted, plaintiff would have obtained a larger settlement. The series of offers made by the Patent Defendants demonstrates a willingness on their part to settle the case for more than the $2.55 million ultimately obtained by plaintiff. Based on the circumstances leading up to the JMOL order, assuming the stay had been granted, a rational juror could find that it is more likely than not that plaintiff would have obtained more than $2.55 million. This is especially true in light of the $4 million settlement the parties "tentatively" reached just prior to the JMOL order. It is true that at the time the stay was requested, the Patent Defendants' offer was only $2.5 million. However, had the stay been granted, the impetus for the Patent Defendants' increasing offers, i.e., the denial of the JMOL and an increased verdict, would have still existed; the stay would have only acted to delay the outcome for 30 days. Thus, a rational juror could find that the Patent Defendants' offers would have continued to increase even if the stay had been put in place. For these reasons, the court finds that defendants' Motion for Partial

13

Summary Judgment (Docket No. 52) should be denied as to defendants' "larger settlement" argument.

**IV. Recommendation**

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendants' Motion for Partial Summary Judgment (Docket No. 52) be **DENIED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colo. Dep't of Corr., 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: May 9, 2014                    s/ Michael J. Watanabe
      Denver, Colorado             Michael J. Watanabe
                                       United States Magistrate Judge