IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01105-REB-MJW

EDWARD H. PHILLIPS, an individual,

Plaintiff,

v.

DUANE MORRIS, LLP, a limited liability partnership,
JOHN C. HERMAN, individually and as a partner of Duane Morris, LLP, and
ALLEN L. GREENBERG, individually and as a partner of Duane Morris, LLP,

Defendants.

_____

MINUTE ORDER

_____

Entered by Magistrate Judge Michael J. Watanabe

It is hereby ORDERED that Defendants' Motion to Strike Plaintiff's Disclosures of "Nonretained" Experts (docket no. 53) is GRANTED.  Plaintiff's non-retained expert witnesses Franklin D. Patterson, Esquire, Plaintiff Edward H. Phillips, and Michael Shane Edgington shall be STRICKEN as non-retained expert witnesses.

This court finds that Plaintiff Phillips' non-retained expert witness Franklin D. Patterson, Esquire, is not retained by another "party" in the case at bar.  Instead, Mr. Patterson was retained as an expert witness in the case of LaRiviere, Grubman & Payne, P.C. v. Phillips, et al., Case No. 07-cv-01723-WYD-CBS filed in the District of Colorado.  The report by Mr. Patterson in the LaRiviere is insufficient under Rule 26(a)(2)(C)(ii).  For these reasons, Franklin D. Patterson, Esquire should be STRICKEN as a non-retained expert.

This court further finds that Plaintiff Phillips has designated himself as an expert witness in the case at bar.  However, it does not appear that Mr. Phillips has provided to Defendants a "summary of facts and opinions to which [he] is expected to testify."  See Fed. R. Civ. P. 26(a)(2)(C)(ii).  Instead, Mr. Phillips directs Defendants to 500 pages of prior depositions and trial testimony and suggested that whatever opinions he has to offer are contained somewhere in those transcripts.  This court finds such a disclosure insufficient under Rule 26(a)(2)(C)(ii).  Moreover, it appears that Mr. Phillips has refused to make himself available for an expert deposition as required under Fed. R. Civ. P. 26(b)(4)(A).  For all of these reasons, Edward H. Phillips should be STRICKEN as a non-retained expert.

This court further finds that Plaintiff Phillips has designated Michael Shane Edgington [Attorney Registration No. 21830] as a non-retained expert. This court will take judicial notice under Fed. R. Evid. 201 that Mr. Edgington was disbarred by the Colorado Supreme Court on April 15, 2011. See attached ruling by Presiding Disciplinary Judge William R. Lucero in Case No. 10PDJ101. Prior to his disbarment, Mr. Edgington was an attorney and a defendant in a related prior malpractice lawsuit. Plaintiff Phillips again suggests that providing Defendants with a prior deposition of the prior malpractice lawsuit of Mr. Edgington without providing a summary of facts and opinions required under Fed. R. Civ. P. 26(a)(2)(C)(ii) is sufficient under Rule 26(a)(2)(C)(ii). This court finds that the prior deposition of Mr. Edgington is insufficient under Rule 26(a)(2)(C)(ii). For these reasons, Michael Shane Edgington should be STRICKEN as a non-retained expert.

Date: May 19, 2014

*People v. Edgington.* 10PDJ101. April 15, 2011. Attorney Regulation. Following a sanctions hearing, the Presiding Disciplinary Judge disbarred Michael S. Edgington (Attorney Registration Number 21830), effective April 15, 2011. Respondent failed to communicate with his client and failed to perform work on his client's behalf, effectively abandoning his client. Respondent told his client that he had drafted, filed, and served a complaint and sent certain correspondence when, in fact, he had never completed those tasks. Further, Respondent billed his client $5.165.25 for work he never completed. His misconduct constitutes grounds for the imposition of discipline pursuant to C.R.C.P. 251.5 and violated Colo. RPC 1.3, 1.4(a), 1.5(a), and 8.4(c).

| | |
|---|---|
| SUPREME COURT, STATE OF COLORADO<br><br>ORIGINAL PROCEEDING IN DISCIPLINE BEFORE<br>THE OFFICE OF THE PRESIDING DISCIPLINARY JUDGE<br>1560 BROADWAY, SUITE 675<br>DENVER, CO 80202 | |
| **Complainant:**<br>THE PEOPLE OF THE STATE OF COLORADO<br><br>**Respondent:**<br>MICHAEL S. EDGINGTON | Case Number:<br>**10PDJ101** |

### DECISION AND ORDER IMPOSING SANCTIONS
### PURSUANT TO C.R.C.P. 251.19(c)

On March 21, 2011, the Presiding Disciplinary Judge ("the Court") held a sanctions hearing pursuant to C.R.C.P. 251.18(b). Margaret B. Funk appeared on behalf of the Office of Attorney Regulation Counsel ("the People"). Michael S. Edgington ("Respondent") did not appear, nor did counsel appear on his behalf. The Court now issues the following "Decision and Order Imposing Sanctions Pursuant to C.R.C.P. 251.19(c)."

## I.   SUMMARY

Disbarment is generally the appropriate sanction when a lawyer knowingly converts client funds and abandons clients. Respondent failed to communicate with, neglected, and ultimately abandoned his client. He also knowingly converted funds from his client. Respondent has not participated in the disciplinary proceedings brought against him, and the Court is unaware of any factors that mitigate his conduct other than an absence of prior misconduct. After considering the nature of Respondent's misconduct and its consequences, the aggravating factors, and the scarcity of countervailing mitigating factors, the Court finds the appropriate sanction is disbarment.

## II.   PROCEDURAL HISTORY

On September 21, 2010, the People filed a complaint alleging that Respondent had violated Colo. RPC 1.3, 1.4(a), 1.5(a), and 8.4(c). Respondent failed to answer the complaint, and on November 16, 2010, the People filed a motion for default. Respondent failed to respond to the motion for default, and the Court granted the motion on January 6, 2011.

On December 16, 2010, the People petitioned the Colorado Supreme Court to immediately suspend Respondent under C.R.C.P. 251.8. Respondent did not participate in that proceeding, and the Colorado Supreme Court suspended Respondent effective January 18, 2011. Respondent remains suspended.

## III.   **ESTABLISHED FACTS AND RULE VIOLATIONS**

Upon the entry of default, the Court deems all facts set forth in the complaint admitted and all rule violations established by clear and convincing evidence.[1] Respondent took and subscribed to the oath of admission and gained admission to the bar of the Colorado Supreme Court on October 15, 1992. He is registered upon the official records under attorney registration number 21830 and is therefore subject to the jurisdiction of the Court pursuant to C.R.C.P. 251.1.

Gery Noonan ("Noonan") hired Respondent in February 2008 to assist him with incorporating his new company, I.E. Electric, and with the buyout of his interest in his former company, Hi-Tech Electric, by his former partner, Richard Rosenthal ("Rosenthal"). Noonan paid Respondent $5,165.25 for his services associated with these matters.

Jim Krendl ("Krendl") represented Rosenthal during the buyout negotiations. By August 2008 it was apparent that the negotiations had broken down. Noonan advised Respondent that the matter needed to be resolved in court as quickly as possible. Respondent agreed to file a complaint and stated he would speak to Krendl about hiring an independent auditor to evaluate the value of Hi-Tech Electric.

On August 26, 2008, Noonan sent Respondent an email inquiring whether Rosenthal had been served with the lawsuit. In response, Respondent stated that service upon Rosenthal had been effected the previous day and that he would check the status of such service. Subsequently, Respondent informed Noonan that Rosenthal had thirty days to respond to the complaint. Unbeknownst to Noonan, at the time Respondent made these representations, Respondent had not served or filed the complaint—nor did he ever serve or file a complaint in the buyout matter.

On September 23, 2008, Noonan sent Respondent a number of emails inquiring about the status of the complaint and whether Rosenthal had filed a response. Noonan sent Respondent multiple additional emails over a five-day period requesting the same information. Respondent did not reply to any of these emails until September 29, 2008, when he sent an email indicating that he would call Noonan later that day. Respondent never phoned Noonan.

---

[1] *See People v. Richards,* 748 P.2d 341, 346 (Colo. 1987); C.R.C.P. 251.15(b).

On October 1, 2008, Respondent sent Noonan an email stating that he had spoken with Krendl, who wanted to delay the lawsuit to explore mediation. Respondent explained that he had advised Krendl that they would delay the lawsuit only if Rosenthal would agree to an independent audit.

On October 9, 2008, Noonan inquired of Respondent the status of a motion for declaratory judgment. The next day, Respondent replied, stating that "Motion is filed. Now we wait on the Court. I asked for an expedited hearing which the rules allow for a declaratory judgment." At that time, however, Respondent had not filed the complaint or the motion for declaratory judgment.

Noonan received a letter from Rosenthal on October 29, 2008. The next day, Noonan spoke with Respondent about this correspondence and emailed Respondent his draft response to the letter. Respondent told Noonan that he would review the letter and the draft response, make any necessary modifications, and send it to Rosenthal. On November 3, 2008, Respondent emailed Noonan and told him that he was sending the response to Rosenthal and would copy Noonan on the letter. But Respondent never sent the letter to Rosenthal or a copy to Noonan. From the period of November 5, 2008, to January 16, 2009, Noonan repeatedly contacted Respondent to obtain a copy of the letter and even offered to come by Respondent's office to pick up a copy. Respondent did not respond to Noonan's attempts to contact him.

Rosenthal again wrote Noonan on January 21, 2009, inquiring as to why Noonan never responded to his October 29, 2008, letter. Subsequently, Noonan made numerous unsuccessful attempts to contact Respondent, to get a copy of his file, and to discuss the status of his case. In a February 11, 2009, letter, Noonan terminated Respondent's services and requested the return of his file.

After terminating Respondent's respresentation, Noonan hired attorney E. Dwight Taylor ("Taylor") to handle the buyout litigation. Taylor sent Respondent an email on February 16, 2009, informing him that Noonan had terminated his services and that Taylor was entering his appearance, and inquiring about the status of the court case. Taylor also contacted Krendl, who informed Taylor that he was unaware of any such litigation. Taylor later confirmed that Respondent had never filed a complaint on Noonan's behalf.

Although Respondent had limited to no contact with Noonan from July 24, 2008, to February 10, 2009, Respondent billed Noonan for his services, including costs and fees associated with the drafting of pleadings and correspondence that were in fact never drafted, filed, or sent. Noonan paid Respondent a total of $5,165.25 for his services.[2]   Respondent has never refunded any of these fees.

---

[2] This amount included a fee of $375.00 for filing and service of process, neither of which occurred.

Respondent never completed the work Noonan hired him to perform, he never communicated with Noonan after July 25, 2008, and he never refunded him the $5,165.25 payment. Through this conduct, Respondent abandoned the duties he owed to his client and violated Colo. RPC 1.3, 1.4(a), 1.5(a), and 8.4(c).

## IV.   SANCTIONS

The ABA Standards for Imposing Lawyer Sanctions ("ABA *Standards*") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct.[3] In selecting a sanction after a finding of lawyer misconduct, the Court must consider the duty violated; the lawyer's mental state; the actual or potential injury caused by the lawyer's misconduct; and the existence of aggravating and mitigating evidence pursuant to ABA *Standard* 3.0.

### ABA *Standard* 3.0 – Duty, Mental State, and Injury

*Duty:* Respondent violated a duty to his client, which arose out of the nature of the basic relationship between the lawyer and the client.[4] Specifically, Respondent violated duties he owed to Noonan by neglecting his matter, failing to perform legal services, failing to communicate with him, failing to be truthful, and converting his funds.[5]

*Mental State:* The order of default establishes that Respondent knowingly[6] exercised unauthorized dominion and control over funds belonging to Noonan, in violation of Colo. RPC 8.4(c). With respect to Respondent's lack of diligent representation and lack of communication pursuant to Colo. RPC 1.3 and 1.4(a), the complaint establishes that Respondent knew or should have known that he was not fulfilling his professional responsibilities and that he knowingly acted dishonestly by representing to Noonan that he had filed pleadings and sent correspondence when he had not.

*Injury:* By failing to provide competent and diligent representation and by making misrepresentations to Noonan, Respondent caused financial, legal, and emotional harm. Respondent's neglect denied Noonan a fair chance to resolve his case as efficiently and effectively as possible. His failure to file pleadings, send correspondence, and otherwise fulfill his obligation to diligently represent his client caused actual serious injury.

---

[3] *See In re Roose,* 69 P.3d 43, 46-47 (Colo. 2003).

[4] *See* ABA *Standard* 4.0.

[5] *Id.*

[6] *See* ABA *Standards, Definitions.* "Knowledge" is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.

As an example, Noonan testified that Respondent's conduct caused Noonan a financial loss totaling over $100,000.00.  The value of Hi-Tech Electric in February 2008, when Noonan first retained Respondent, was $1,300,000.00. According to Noonan, per his initial agreement with Rosenthal, he should have received $152,000.00 at closing and $12,383.00 per month for forty-eight months for the buyout of his interest in the company.  Had Respondent timely acted, Noonan would have begun receiving such payments in 2008.  By the time Noonan retained Taylor, Hi-Tech Electric was only worth $600,000.00,[7] and its value was continuing to diminish.   When Taylor resolved the buyout in November 2009 through arbitration, Noonan received $50,000.00 in goods and tools and a guaranteed payment of $4,600.00 per month for forty-eight months. In addition, Noonan suffered the financial harm of having to hire a second lawyer to complete the legal process.

Further, Noonan testified that Respondent's neglect of his case delayed the buyout proceedings, which caused him stress and frustration and led him to distrust lawyers. Respondent also injured his client by depriving him of funds belonging to him.  Noonan paid Respondent over $5,000.00 for work Respondent failed to complete.  Respondent has not returned any of the funds he owes to Noonan.

### ABA *Standard* 3.0 – Aggravating & Mitigating Factors

Aggravating circumstances include any considerations or factors that may justify an increase in the degree of discipline to be imposed.[8]  Mitigating circumstances include any considerations or factors that may justify a reduction in the degree of discipline to be imposed.[9]

The Court considered evidence of the following aggravating and mitigating circumstances in deciding the appropriate sanction.

*Selfish Motive – 9.22(b):*  Respondent acted with a dishonest and selfish motive when he made false representations to his client about filing pleadings and sending correspondence and then proceeded to bill Noonan for these services knowing he had not completed them.  By converting funds from his client, Respondent benefitted himself at his client's expense.

*A Pattern of Misconduct – 9.22(c):*   Respondent repeatedly failed to respond to client requests for information over a period of many months.

---

[7] Noonan testified that the value of the business had decreased because Rosenthal lost over $600,000.00 for the company during this time period.

[8] ABA *Standard* 9.21.

[9] ABA *Standard* 9.31.

*Multiple Offenses – 9.22(d):* Respondent violated multiple rules of professional conduct (Colo. RPC 1.3, 1.4(a), 1.5(a), and 8.4(c)) and he violated Colo. RPC 8.4(c) on more than one occasion.

*Refusal to Acknowledge Wrongful Nature of Conduct – 9.22(g):* Respondent refused to participate in these disciplinary proceedings as required by C.R.C.P. 251.5 and has not returned any of the funds he converted from his client.

*Substantial Experience in the Practice of Law – 9.22(i):* Respondent was admitted to the bar in 1992; he thus has considerable experience practicing law.

*Absence of Prior Disciplinary Record – 9.32(a):* The Court considers Respondent's lack of disciplinary history as a factor in mitigation.

### Analysis Under ABA *Standards* and Colorado Case Law

Under the ABA *Standards*, the presumptive sanction for Respondent's misconduct is disbarment. ABA *Standard* 4.11 provides that disbarment is typically warranted when a lawyer knowingly converts client property and thereby causes injury or potential injury.[10]

Similarly, ABA *Standard* 4.41 provides that disbarment is generally appropriate when a lawyer causes serious or potentially serious injury to a client by knowingly failing to perform services for a client, engaging in a pattern of neglect with respect to client matters, or abandoning their practice.

The Colorado Supreme Court has held that, except where significant mitigating factors apply, disbarment is the appropriate sanction for knowing conversion of client funds in violation of Colo. RPC 8.4(c).[11] Where a lawyer's conversion of client funds is coupled with abandonment of the client, it is all the more clear that disbarment is the presumptive sanction.[12]

The ABA *Standards* further provide that, in cases involving multiple charges of misconduct, "[t]he ultimate sanction imposed should at least be

---

[10] Although Appendix 1 of the ABA *Standards* indicates that the standards applicable to violations of Colo. RPC 8.4(c) are ABA *Standards* 4.6 and 5.1, the Court determines that ABA *Standard* 4.1 is more relevant to this type of violation of Colo. RPC 8.4(c) because ABA *Standard* 4.1 specifically addresses conversion.

[11] *See In re Haines*, 177 P.3d 1239, 1250 (Colo. 2008); *In re Cleland*, 2 P.3d 700, 703 (Colo. 2000); *see also People v. Varallo*, 913 P.2d 1, 10-11 (Colo. 1996) (holding that the presumed sanction for knowing conversion of client funds is disbarment, regardless of whether the lawyer intended to permanently deprive the client of those funds).

[12] *See In re Stevenson*, 979 P.2d 1043, 1044-45 (Colo. 1999) (disbarring an attorney who abandoned a client and converted her funds); *People v. Roybal*, 949 P.2d 993, 998 (Colo. 1997) (stating that disbarment is "appropriate when a lawyer effectively abandons his clients and thereby misappropriates unearned attorney fees").

consistent with the sanction for the most serious instance of misconduct among a number of violations; it might well be and generally should be greater than the sanction for the most serious misconduct."[13]

Given the abandonment and conversion in this matter and the balance of aggravating and mitigating factors, disbarment is clearly the appropriate sanction under the ABA *Standards* and Colorado case law.

## V.   CONCLUSION

Respondent abdicated his professional responsibilities in his representation of Noonan. Respondent's failure to respond to his client in the face of Noonan's persistent efforts to contact Respondent, Respondent's outright abandonment of Noonan's case, and Respondent's continuing failure to return funds that are not rightfully his reflect very poorly on the legal profession. In light of the serious nature of Respondent's misconduct and the need to protect the public from future such misconduct, the Court concludes Respondent should be disbarred.

## VI.   ORDER

The Court therefore **ORDERS**:

1. Michael S. Edgington, Attorney Registration No. 21830, is hereby **DISBARRED** from the practice of law. The disbarment **SHALL** become effective thirty-one days from the date of this order upon the issuance of an "Order and Notice of Disbarment" by the Court and in the absence of a stay pending appeal pursuant to C.R.C.P. 251.27(h).

2. Respondent **SHALL** file any post-hearing motion or application for stay pending appeal with the Court **on or before Thursday, May 5, 2011**. No extensions of time will be granted.

3. Respondent **SHALL** pay the costs of these proceedings. The People shall submit a "Statement of Costs" within fifteen (15) days of the date of this order. Respondent shall have ten (10) days within which to respond.

4. Respondent **SHALL** pay restitution of $5,165.25 to Gery Noonan, or in the alternative, reimburse the Colorado Attorney's Fund for Client Protection for all disbursements to Gery Noonan associated with this disciplinary matter.

---

[13] *See* ABA *Standards* § II at 7.

DATED THIS 15th DAY OF APRIL, 2011.


_____
WILLIAM R. LUCERO
PRESIDING DISCIPLINARY JUDGE

Copies to:

Margaret B. Funk            Via Hand Delivery
Office of Attorney Regulation Counsel

Michael S. Edgington        Via First Class Mail
10606 Clarke Farms Drive
Parker, CO 80134

19563 E. Mainstreet, Ste. 201B
Parker, CO 80138

9567 Deerhorn Ct., #15
Parker, CO 80134

Susan Festag                Via Hand Delivery
Colorado Supreme Court