IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Robert E. Blackburn**

Civil Action No.  13-cv-01105-REB-MJW

EDWARD H. PHILLIPS, an individual,

    Plaintiff,

v.

DUANE MORRIS, LLP, a limited liability partnership,
JOHN C. HERMAN, individually and as partner of Duane Morris, LLP, and
ALLEN C. GREENBERG, individually and as a partner of Duane Morris, LLP,

    Defendants.

## ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT WILLIAM A. TRINE UNDER FED.R.EVID. 702

**Blackburn, J.**

The matter before me is **Defendants' Motion To Exclude Plaintiff's Expert William A. Trine Under Fed. R. Evid. 702** [#63],[1] filed April 25, 2014.  I deny the motion.

### I.  JURISDICTION

I have jurisdiction over this case pursuant to 28 U.S.C. § 1331 (diversity of citizenship).

### II.  STANDARD OF REVIEW

By this motion, defendants seek to exclude the opinions of plaintiff's designated expert, William A. Trine.  Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert witness testimony, provides that

---

[1] "[#63]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

> [a] witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

**FED. R. EVID.** 702.  As interpreted by the Supreme Court, Rule 702 requires that an expert's testimony be both reliable, in that the witness is qualified to testify regarding the subject, and relevant, in that it will assist the trier in determining a fact in issue. ***Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 509 U.S. 579, 589-92, 113 S.Ct. 2786, 2795-96, 125 L.Ed.2d 469 (1993); ***Truck Insurance Exchange v. MagneTek, Inc.***, 360 F.3d 1206, 1210 (10th Cir. 2004).  The Supreme Court has described the court's role in weighing expert opinions against these standards as that of a "gatekeeper."  See ***Kumho Tire Company, Ltd. v. Carmichael***, 526 U.S. 137, 147, 119 S.Ct. 1167, 1174, 142 L.Ed.2d 248 (1999).

Under ***Daubert*** and its progeny, an expert opinion is reliable if it is based on scientific knowledge.  "The adjective 'scientific' implies a grounding in the methods and procedures of science.  Similarly the word 'knowledge' connotes more than subjective belief or unsupported speculation."  ***Daubert***, 113 S.Ct. at 2795.  In short, the touchstone of reliability is "whether the reasoning or methodology underlying the testimony is scientifically valid."  ***Id***.

The Tenth Circuit employs a two-step analysis when considering the admissibility of expert testimony under Rule 702.  ***103 Investors I, L.P. v. Square D Co.***, 470 F.3d

985, 990 (10th Cir. 2006). The first step is codified in Rule 702(a) and inquires whether the expert "is qualified . . . to render an opinion." *Id*. A witness may be qualified as an expert by "knowledge, skill, experience, training, or education." **FED. R. EVID.** 702. In addressing an expert qualifications, the court should examine:

> whether the witness proposes to testify about matters growing naturally and directly out of research he or she conducted independent of the litigation, whether the witness developed opinions expressly for purposes of testifying, and whether the field of expertise claimed by the witness is known to reach reliable results for the type of opinion the witness intends to express.

*United States v. Crabbe*, 556 F.Supp.2d 1217, 1221 (D. Colo. 2008).

The second step of the admissibility analysis, codified in Rules 702(b), (c), and (d), examines "whether the expert's opinion is reliable." *103 Investors I*, 470 F.3d at 990. Pursuant to Rule 702(b), "the proponent of the opinion must show that the witness gathered 'sufficient facts or data' to formulate the opinion." *Crabbe*, 556 F.Supp.2d at 1223. This inquiry calls for a "quantitative rather than qualitative analysis." *United States v. Lauder*, 409 F.3d 1254, 1264 n.5 (10th Cir. 2005).

Analysis under Rule 702(c) "involves two related inquires: (I) what methodology did the witness use to reach the opinion; and (ii) is that methodology generally deemed 'reliable' in the field in which the expert works." *Crabbe*, 556 F.Supp.2d at 1222. "[T]he articulation of a methodology usually can be made without reference to the specific opinion or to any of the specific facts in the case; it is simply an explanation of the process the witness used." *Id*. As for reliability, the question is "whether the reasoning or methodology underlying the testimony is scientifically valid." *Daubert*, 113 S. Ct. at

2796.  In assessing the reliability of the proffered methodology, the court should consider

> whether the theory or technique in question can be (and has been) tested, whether it has been subjected to peer review and publication, its known or potential error rate and the existence and maintenance of standards controlling its operation, and whether it has attracted widespread acceptance within a relevant scientific community.

*Id*. at 2790.  These factors, however, "are neither exclusive nor dispositive."  **Crabbe**, 556 F.Supp.2d at 1223.

Finally, Rule 702(d) requires that the expert reliably apply "the principles and methods to the facts of the case."  **FED. R. EVID.** 702(d).  Factors that inform this analysis include, but are not limited to,

> (I) whether the expert employed the same degree of intellectual rigor in formulating the opinion as he or she would be expected to employ in his or her own professional life; (ii) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion (i.e., whether there is too great an analytical gap between the data and the opinion proffered); and (iii) whether the expert adequately accounted for obvious alternative explanations.

**Crabbe**, 556 F.Supp.2d at 1224.  The requirement that the witness reliably apply his methods to the facts "is not an invitation to a court to assess the worth of the opinion itself.  The court's focus is simply upon whether the witness followed the dictates of the methodology in considering the facts and data."  *Id.* at 1223.

Guided by these principles, the trial court has broad discretion in determining whether expert testimony is sufficiently reliable and relevant to be admissible.  **Truck Insurance Exchange**, 360 F.3d at 1210; **Smith v. Ingersoll-Rand Co.**, 214 F.3d 1235,

1243 (10th Cir. 2000). The overarching purpose of the court's inquiry is "to make certain that the expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." **Goebel v. Denver and Rio Grand Western Railroad Co.**, 346 F.3d 987, 992 (10th Cir. 2003) (quoting **Kumho Tire**, 119 S.Ct. at 1176). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." **Daubert**, 113 S.Ct. at 2798.

### III. ANALYSIS

This is an action for legal malpractice. The case arises from an underlying patent suit against various entities which plaintiff alleged were infringing his patent. The protracted history of this matter is well-known to the parties and need not be repeated at length here. The case ultimately was tried to a jury before then-Judge (now Chief Judge) Krieger in February and March of 2006. The jury returned a verdict in favor of plaintiff for $1.85 million in compensatory damages. Together with treble damages (based on the jury's advisory finding of a willful violation of plaintiff's patent rights) and attorney fees, the full amount of recovery ultimately could have totaled more than $10 million.

Still pending at the time the jury returned its verdict, however, was the patent defendants' Rule 50 motion for judgment as a matter of law, which Judge Krieger had taken under advisement at the close of the trial. In early November 2006, after the Rule 50 motion (and other post-trial motions) had been briefed and argued, the patent defendants offered plaintiff two million dollars to settle the case. He dismissed his trial

counsel and hired defendant Duane Morris, LLP, and attorneys John Herman and Allen Greenberg of the firm to represent him for purposes of settlement negotiations.

In early December, defendants submitted a counterproposal to the patent defendants, who then increased their settlement offer to $2.5 million. In connection with that offer, the patent defendants requested plaintiff agree to a 30-day stay of the proceedings in order to facilitate settlement. Defendants, on behalf of plaintiff, rejected the request to seek a stay from the district court. After further negotiations, the parties agreed to settle the case for $4 million on December 22, 2006. However, before the agreement could be finalized, the parties received notice of Judge Krieger's December 20, 2006, order granting the patent defendants' Rule 50 motion.[2] The patent defendants immediately withdrew their $4 million settlement offer, but the parties subsequently renegotiated and settled the case for $2.55 million. Defendants were paid $250,000 from the settlement proceeds for their work.[3]

In this lawsuit, plaintiff claims defendants committed legal malpractice. As required by Colorado law, *see* §13-20-601, C.R.S.; **White v. Jungbauer**, 128 P.3d 263, 264 (Colo. App. 2005), plaintiff has proffered the testimony of a purported expert witness to establish the applicable standard of care. Plaintiff's expert, William A. Trine, is a highly experienced Colorado civil trial attorney. Among his varied and extensive trial experience, however, he admittedly has never litigated a patent suit, nor does he claim to be an expert in patent or intellectual property law. Defendants maintain that Mr.

---

[2] Receipt of the order was delayed due to a blizzard which closed the courthouse on December 21, 2006.

[3] This is the only payment plaintiff ever made to defendants. Defendants subsequently represented plaintiff when his trial counsel sued him for unpaid attorney fees. Defendants aver that they ultimately incurred some $232,000 in fees and costs as a result of that representation.

Trine therefore is unqualified to opine as to the standard of care relevant to their representation of plaintiff in the patent suit.  They further claim that no expert opinion is appropriate as to the question whether Judge Krieger would have granted a stay had one been requested.  Finally, they assert that Mr. Trine's opinions regarding the reasonableness of the fee charged lack foundation.  I examine these opinions in turn.

Defendants first argue that Mr. Trine is unqualified to offer an opinion regarding the standard of care because he has never litigated a patent case and therefore cannot adequately evaluate the objective likelihood that Judge Krieger would have granted the patent defendants' Rule 50 motion.  Their argument is based on a faulty premise, however.  The opinion Mr. Trine offers is not directed at the merit *vel non* of the motion for judgment as a matter of law, but instead questions the reasonableness of defendants' decision – knowing that such a motion was pending – to reject the patent defendants' request for a brief stay of the proceedings to facilitate settlement negotiations.[4]  The focus of this relevant inquiry is not on the intricacies of patent law, but on the more general considerations that would be expected to inform a reasonable attorney's decisions in settlement negotiations in civil litigation more broadly. Defendants have not shown that there is anything unique about patent cases in this more relevant respect, and, to the extent there may be, such matters clearly can be explored adequately on cross examination.  They do not counsel against striking Mr. Trine's opinions wholesale.

Next, defendants suggest that Mr. Trine should not be permitted to opine as to

---

[4] Indeed, defendants themselves argued in support of their motion for partial summary judgment that this was the seminal issue in the case.  (***See* Order Overruling Objections to and Adopting Recommendation of United States Magistrate Judge** at 3-4 [#84], filed May 28, 2014.)

whether a reasonable jurist, such as Judge Krieger, would have granted a stay had one been requested because that issue is one of law for the court to determine. As I noted in my order denying defendants' motion for partial summary judgment, although the issue is one for the court, it is a factual, not a legal, determination. (*See* **Order Overruling Objections to and Adopting Recommendation of United States Magistrate Judge** at 4 & n.2 [#84], filed May 28, 2014.)  This argument therefore fails in its premise as well.

Finally, defendants maintain that Mr. Trine's opinions regarding the nature and reasonableness of the fee charged to plaintiff lacks foundation. Their arguments amount to nothing more than a disagreement as to the import of the facts, rather than a true challenge to the quantum of facts, on which the opinion is based. Again, such matters go to the weight, not the admissibility, of the expert's opinion and do not warrant striking Mr. Trine's opinion.

**THEREFORE, IT IS ORDERED** that **Defendants' Motion To Exclude Plaintiff's Expert William A. Trine Under Fed. R. Evid. 702** [#63], filed April 25, 2014, is **DENIED**.

Dated May 29, 2014, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn
Robert E. Blackburn
United States District Judge